985 F.2d 847
 24 Fed.R.Serv.3d 973
 Bonnie Rae LOVELACE, Plaintiff-Appellant/Cross-Appellee,
v.
Lark O'HARA, Officer, Deputy Sheriff, Pendleton County
Sheriff's Department, Defendant-Appellee/Cross-Appellant,
Pendleton County Sheriff's Department, Defendant.
 Nos. 92-5006, 5044.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 9, 1992.
Decided and Filed Feb. 11, 1993.
 
 Edwin F. Kagin (argued and briefed), Newport, KY, for Bonnie Rae Lovelace.
 W. Kenneth Nevitt, Williams & Wagoner, Louisville, KY, C. Donald Wells, Falmouth, KY, for Lark O'Hara in No. 92-5006.
 C. Thomas Hectus, R. Thaddeus Keal (argued and briefed), Williams & Wagoner, Louisville, KY, for Pendleton County Sheriff's Dept.
 W. Kenneth Nevitt, C. Thomas Hectus, R. Thaddeus Keal (argued and briefed), Williams & Wagoner, Louisville, KY, C. Donald Wells, Jeffrey Dean, Falmouth, KY, for Lark O'Hara in No. 92-5044.
 Before: NATHANIEL R. JONES and RYAN, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 This is an action for damages under 42 U.S.C. § 1983 in which Appellant Bonnie Lovelace claims that Appellee Lark O'Hara, a deputy with the Pendleton County Sheriff's Department, violated her constitutional rights by preventing her from occupying her home. Mrs. Lovelace appeals from the district court's order granting O'Hara summary judgment on the grounds of qualified immunity. O'Hara cross-appeals the district court's order granting Mrs. Lovelace leave to amend her complaint to name O'Hara in his individual capacity after the statute of limitations had run. For the reasons stated below, we reverse the district court's order allowing Mrs. Lovelace to amend her complaint.
 
 FACTS
 
 2
 In 1989 Appellant Bonnie Lovelace divorced her husband, William Lovelace, who had a history of mental illness. On May 30, 1989, Mrs. Lovelace and her three children left the marital home because of death threats from Mr. Lovelace. In June, Mrs. Lovelace filed for a restraining order to prevent Mr. Lovelace from coming to the residence or otherwise threatening or harassing Mrs. Lovelace or the children. In August 1989, Mr. Lovelace stopped making mortgage payments on the house. The mortgage holder advised Mrs. Lovelace that if no one lived in the house, the note would be in default. On August 24, 1989, Mrs. Lovelace attempted to move back into the house.
 
 
 3
 That same day, Appellee O'Hara received a phone call from the Falmouth Police Department informing him that Mr. Lovelace was there and had reported that Mrs. Lovelace was moving back into the house, but had no legal right to do so. Mr. Lovelace later appeared at O'Hara's office and repeated his claim that Mrs. Lovelace had no right to occupy the house. O'Hara phoned Mr. Lovelace's divorce attorney, David Doan, who confirmed Mr. Lovelace's contention. O'Hara twice tried to reach Mrs. Lovelace's divorce attorney, Thomas Troth, but was unsuccessful. Eventually, Doan called O'Hara and told him that he had reached Troth and that the attorneys agreed that no one was to occupy the house and that O'Hara should ask Mrs. Lovelace to leave. Troth later denied that he had spoken to Doan.
 
 
 4
 Immediately after speaking to Doan, O'Hara received a call from dispatch informing him that there was a breaking and entering in progress at the Lovelace residence. O'Hara proceeded to the Lovelace house and told Mrs. Lovelace about his conversation with Doan. Mrs. Lovelace contends that O'Hara forced her to leave her home without any of her possessions and prevented her from calling her attorney. O'Hara asserts that he merely relayed the message from Doan and that he did not prevent Mrs. Lovelace from taking anything or making phone calls. O'Hara contends that he was concerned for Mrs. Lovelace's safety because he was aware that Mr. Lovelace had recently been restrained and transported to the psychiatric ward of a hospital. O'Hara had also heard that Mr. Lovelace might be armed. Mrs. Lovelace moved back into the house about a month later.
 
 
 5
 On August 14, 1990, Mrs. Lovelace filed an action for damages under 42 U.S.C. § 1983 against "Officer Lake [sic] O'Hara, Deputy Sheriff, Pendleton County Sheriff's Department" claiming that O'Hara had violated her fourth, fifth, and fourteenth amendment rights. The original complaint also stated:
 
 
 6
 At all times referenced herein, the defendant was employed by the Pendleton County Sheriff's Department acting within the scope and course of his employment therein; not as an individual, but rather under the color and pretense of the title of his office; under the authority of his office as a police officer; clearly within the expressed and implied powers of his official capacity.
 
 
 7
 Complaint p 4 (emphasis added).
 
 
 8
 Accordingly, the district court treated the complaint as being against O'Hara in his official capacity and on August 19, 1991, granted summary judgment to the Pendleton County Sheriff's Department. However, the court also granted Mrs. Lovelace leave to file an amended complaint naming O'Hara in his individual capacity without prejudice to any motion by the defendant to dismiss the amended complaint on the grounds of qualified immunity or the statute of limitations.
 
 
 9
 On November 27, 1991, the district court granted Mrs. Lovelace's motion to amend the complaint despite the running of the one year statute of limitations. The district court held that the amended complaint related back to the original complaint under Fed.R.Civ.P. 15(c) because "the language of the original complaint was broad enough to give O'Hara notice that he was being sued in his individual capacity." Opinion and order, p. 6. The district court then considered and granted O'Hara's motion for summary judgment on the grounds of qualified immunity. Mrs. Lovelace appeals the grant of summary judgment. O'Hara cross-appeals the order permitting Mrs. Lovelace to amend her complaint and denying his motion to dismiss on the basis of the statute of limitations.
 
 ANALYSIS
 
 10
 The threshold issue here is whether the district court erred in allowing Mrs. Lovelace to amend her complaint. Fed.R.Civ.P. 15(c), as amended in December 1991, provides in pertinent part:
 
 
 11
 An amendment of a pleading relates back to the date of the original pleading when
 
 
 12
 (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
 
 
 13
 (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
 
 
 14
 (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(j) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 15
 Fed.R.Civ.P. 15(c)(3) addresses the circumstances in this case. The first requisite for relation back under Fed.R.Civ.P. 15(c)(3) incorporates Fed.R.Civ.P. 15(c)(2) which requires that the claim or defense asserted in the amended pleading must have arisen out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Once this is satisfied, it must be shown that within the period provided in Fed.R.Civ.P. 4(j), i.e. 120 days after the filing of the complaint, the party to be brought into the suit has received notice of the action such that he will not be prejudiced in maintaining a defense on the merits and that the party knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
 
 
 16
 Applying these requirements to this case, there is no question that the original and amended complaints clearly involve the same conduct. However, with regard to the notice requirement, we are not convinced that O'Hara had such notice of the suit during the 120 days following the filing of the original complaint that his defense will not now be prejudiced. O'Hara does not contend that he did not have general knowledge of the lawsuit. However, he argues that the first notice he had that he was being sued in his individual capacity was when Mrs. Lovelace filed her amended complaint. This occurred several months after the 120 days allowed for service of the summons and complaint. Suit in his individual capacity exposed O'Hara to the possibility of having to pay damages from his personal assets. He argues that he has been prejudiced because if he had known that he was being sued in his individual capacity, he may have retained independent counsel or participated more fully in the defense.
 
 
 17
 We agree that O'Hara's argument has merit. This court has recognized the importance of giving defendants notice of the capacity in which they are being sued. In Wells v. Brown, 891 F.2d 591 (6th Cir.1989), this court stated:
 
 
 18
 [T]he face of a complaint must indicate whether a plaintiff seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees. Although modern pleading is less rigid than in an earlier day, we have not let down all pleading barriers. It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.
 
 
 19
 Id. at 593 (citations omitted).
 
 
 20
 Here the original complaint contained a statement that O'Hara acted "not as an individual," but "clearly within the expressed and implied powers of his official capacity." From this statement, it seems clear that Mrs. Lovelace intended to hold the state responsible for O'Hara's actions. O'Hara had no reason to believe that he would be held personally liable or that his personal assets were at stake. This clearly fails to comport with the requirement of Wells that a defendant be "clearly notified of the potential for payment of damages individually." Id.
 
 
 21
 Furthermore, the distinction between an official capacity and an individual capacity suit is significant. As the dissent in Hill v. Shelander noted, "an amendment in a defendant's capacity in a lawsuit under 42 U.S.C. § 1983 alters the elements of recovery and defense ... [and] require[s] major changes in pleading, discovery, trial preparation and selection and location of witnesses to testify at trial." 924 F.2d 1370, 1384 (7th Cir.1991) (Coffey, J., dissenting). As O'Hara argues, knowledge that he was being sued personally may have prompted him to develop a much different legal strategy. Thus, we must conclude that he did not have such notice within 120 days of the filing of the complaint as to preclude prejudice in the preparation of his defense.
 
 
 22
 Furthermore, we do not believe that the final requisite for relation back under 15(c) has been met. This requires that the defendant knew or should have known that, but for a mistake in identity, the suit would have been brought against him. There does not appear to be such a mistake here. The original complaint contains an unequivocal statement that O'Hara's actions were "clearly within the expressed and implied powers of his official capacity." Thus, the complaint evidences an intentional choice by Mrs. Lovelace's attorney to bring an official capacity suit. That such a choice may not have been wise and that the attorney later sought to change it, is insufficient to invoke relation back of the amendment under Fed.R.Civ.P. 15(c). With such a clear statement in the pleadings, O'Hara had no reason to believe that he was being sued in his personal capacity or that, but for a mistake concerning identity, the suit would have been against him personally. Thus, the amended complaint fails to meet the criteria for relation back set forth in Fed.R.Civ.P. 15(c)(3).
 
 
 23
 We note that other circuits have decided similar cases differently.[1] In Kirk v. Cronvich, 629 F.2d 404 (5th Cir.1980), the Fifth Circuit allowed the amendment of a § 1983 complaint which originally named the Parish of Jefferson and the Jefferson Parish Sheriff's Office as defendants to name Alwynn J. Cronvich, individually and in his capacity as sheriff. We find this case to be distinguishable from the present case because the amendment did not change the defendant's capacity, but instead corrected the plaintiff's misidentification of a defendant not amenable to suit to the proper entity.
 
 
 24
 In Shelander, supra, an inmate brought a pro se § 1983 suit against a prison guard for violations of his eighth amendment rights. The first complaint did not name the guard in either his individual or official capacity. Id. at 1371. The prisoner then received appointed counsel who amended the complaint to name the guard in his official capacity. Later, the first attorney withdrew and a second attorney was assigned. The second attorney attempted to amend the complaint to name the guard in his individual capacity. However, the district court granted the guard's motion for summary judgment on the grounds that the statute of limitations had run on the underlying tort, thus ruling out the amendment naming the guard in his individual capacity. Id. The Seventh Circuit reversed, holding that the guard was not prejudiced because he had long known that the suit had been brought against him and the amendment merely corrected the error regarding the capacity in which he was sued. Id. at 1378.
 
 
 25
 The dissent in Hill argued that neither the notice nor the mistaken identity requirements of Fed.R.Civ.P. 15(c) were met. The dissent argued that "the plaintiff's mistake concerned a matter of law--the capacity in which he sued [the guard]--rather than a misapprehension of [the guard's] identity." 924 F.2d at 1382 (Coffey, J., dissenting). Since the guard was without effective notice that the suit was against him in his individual capacity, the dissent reasoned that he was prejudiced by the amendment. Id. at 1381 (Coffey, J., dissenting). The dissent noted the divergent proof, defenses, and legal arguments required for individual capacity suits, as opposed to official capacity suits. Thus, the dissent concluded that the amendment could not relate back under Fed.R.Civ.P. 15(c) because the plaintiff had failed to establish that the error concerning the designation of the guard's capacity was a mistake concerning identity and because the guard had suffered prejudice. Id.
 
 
 26
 As evidenced by our own analysis, we find the reasoning of the dissent to be persuasive. The majority in Shelander discounts the prejudice to the defendant who suddenly finds his personal assets in jeopardy long after the suit has been instituted against him in his official capacity. However, the Sixth Circuit has plainly recognized this prejudice by stating that "[i]t is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually." Wells, 891 F.2d at 593. We base our conclusion here largely on this circuit precedent.
 
 
 27
 The only remaining avenue for relation back would be under Fed.R.Civ.P. 15(c)(1) which allows for relation back when it is allowed by the law that provides the statute of limitations for the action. We note that § 1983 does not provide a statute of limitations. Therefore, the most analogous state statute of limitations has application. Collard v. Ky. Bd. of Nursing, 896 F.2d 179, 180 (6th Cir.1990). The applicable statute here is K.R.S. § 413.140 which limits personal injury actions to one year. Id. at 182. However, this statute contains no specific provision for relation back.
 
 CONCLUSION
 
 28
 We conclude that the district court erred in granting Mrs. Lovelace's motion to amend after the running of the statute of limitations. Our disposition of the case on this issue moots the appeal with regard to whether O'Hara was entitled to qualified immunity. Accordingly, the judgment of the district court is reversed and the cause is remanded for dismissal of the amended complaint on the grounds that it is barred by the statute of limitations.
 
 
 
 [1]
 We note that these cases predate the amendment of Fed.R.Civ.P. 15(c) in December 1991. The rule, prior to amendment, required that the party to be brought in to the suit received the requisite notice and knew or should have known about the mistake in identity in the pleading within the limitations period for the cause of action. The amended rule changes the time period to 120 days from the filing of the original complaint. This change does not affect the validity of these cases with regard to their analysis of the notice and knowledge of the misidentification requirements